IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs May 17, 2017

**JEFFREY HENRY v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Shelby County**
**No. 13-06323, 13-06324    John Wheeler Campbell, Judge**

————————————————————

**No. W2016-01821-CCA-R3-PC**

————————————————————

Petitioner, Jeffrey Henry, was indicted in case number 13-06323 by a Shelby County Grand Jury for rape of a child and aggravated sexual battery. Petitioner was also indicted in case number 13-06324 for two counts of rape of a child and two counts of aggravated sexual battery. Petitioner entered best interest guilty pleas in both cases to each count of aggravated sexual battery in exchange for dismissal of the remaining charges. Petitioner agreed to serve an out-of-range sentence of 20 years at 100%. Petitioner filed a petition for post-conviction relief, alleging that he received ineffective assistance of counsel and that his pleas were unknowingly and involuntarily entered. Following an evidentiary hearing, the post-conviction court denied relief. After review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, P.J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ROBERT W. WEDEMEYER, JJ., joined.

Michael Thorne, Lexington, Tennessee, for the appellant, Jeffrey Henry.

Herbert H. Slatery III, Attorney General and Reporter; Robert W. Wilson, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Leslie Byrd, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*Guilty plea hearing*

Petitioner entered guilty pleas to two matters in the Criminal Court of Shelby County, on January 12, 2015. At Petitioner's plea hearing, the State provided the following factual basis for Petitioner's guilty plea in case number 13-06323:

The victim [C.P.] . . . was six years old at this time between the dates of June 1st, 2013 and July 25th of 2013. [Petitioner] was staying with [C.P.'s] grandmother, Bernette Gross . . . . [Petitioner] took [C.P.] into the bathroom of the trailer, ran a bath for her and got into the bathtub with her. While in the bathtub [Petitioner] proceeded to rub [C.P.'s] vagina as she described in a circular motion. Someone figured out in the house that they were alone in the bathroom together, tried to open the door and it was locked. [Petitioner] admitted that he was wrong in doing this.

With regard to case number 13-06324, the State provided the following factual basis for the guilty plea:

[B]etween the dates of June 1st, 2013 and August 5th of 2013, five year old [M.C.] and seven year old [K.C.] . . . would stay with their father . . . who also lived with [        ] . . . . [Petitioner] took [K.C.] the seven year old female, to the bathroom in the trailer and she disclosed that he put his finger inside of her private part, her vagina. Now, [M.C.] her sister, who's five years old said that [Petitioner] didn't hurt her like he hurt her sister, [K.C.]. He just rubbed her vagina and would put glitter on it.

During the plea colloquy, the trial court explained to Petitioner all of the rights that he was giving up by entering a guilty plea. The trial court specifically mentioned that Petitioner would be giving up his right to an appeal, and Petitioner indicated that he understood that his right to appeal would be waived. The trial court then went over the specifics of the charges and the sentencing ranges, and Petitioner indicated that he understood that he would be pleading guilty to three counts of aggravated sexual battery as a Range II offender.

The trial court inquired about Petitioner's representation by trial counsel by asking if trial counsel had discussed all of the facts and circumstances surrounding the case with Petitioner; if trial counsel had answered all of the questions Petitioner had about the case; if trial counsel had done everything that Petitioner had asked him to do; and if Petitioner was satisfied with trial counsel's representation. To each question, Petitioner responded, "Yes, sir." Following the aforementioned discussions, Petitioner entered a best interest guilty plea pursuant to *North Carolina v. Alford*, 400 U.S. 25 (1970).

### Post-Conviction Hearing

Petitioner subsequently filed a timely petition for post-conviction relief. In the petition, he argued that he received ineffective assistance of counsel, that his plea was unknowing and involuntary, and additional issues which were not appealed. The post-

conviction court appointed counsel and held a hearing on the petition for post-conviction relief.

Trial counsel testified that he represented Petitioner for approximately ten months on the two indictments in this case. Trial counsel stated that he and Petitioner discussed everything "from [Petitioner's] living situation, to [Petitioner's] parents, to . . . the facts alleged." Trial counsel said that he and Petitioner "had a solid rapport." During the course of his representation, trial counsel discussed with Petitioner potential convictions and the sentencing exposure associated with each potential conviction. Trial counsel told Petitioner that it was possible that he could face between 75 and 120 years in prison. Additionally, trial counsel explained that he reviewed the discovery with Petitioner and conducted an investigation into the matter. Trial counsel also stated that he considered hiring an expert in child psychology if the case were to go to trial. Trial counsel felt that there was a "significant danger" if the first indictment went to trial and characterized it as "a stronger . . . case" for the State. Even though trial counsel thought that the case on the second indictment "wasn't that strong" for the State, he stated that "it could be dangerous to the client." Trial counsel believed that Petitioner could have received more jail time on a single conviction of child rape at trial on the first indictment than the amount of time Petitioner received under the deal offered by the State.

Trial counsel contemplated filing a motion to suppress a statement pertaining to Petitioner's intoxication at the time of one of the offenses. Ultimately, a motion to suppress was not filed because, in the words of trial counsel, "we decided to see if we could shoot for an offer[.]" Trial counsel was unable to remember if he prepared anything for the potential filing of a motion to suppress. However, trial counsel said that one reason that he did not file a motion to suppress was that he was concerned that it would stifle negotiations with the State.

The State made plea offers which trial counsel communicated to Petitioner. Trial counsel indicated that he believed the initial offer from the State was 35 years at 100% to run concurrently for each charge of rape of a child. Later, the State offered Petitioner an out-of-range sentence of 20 years at 100% for each charge of aggravated sexual battery. The sentences would run concurrently with each other. According to trial counsel, Petitioner was initially hesitant to take the deal but eventually decided to plea. Trial counsel gave the following description of his discussion with Petitioner:

> [I]n the end, we looked at it and we looked at what we were potentially facing and if he were to get convicted, he may never see the outside again. And the offer that we did receive was three counts of the lesser charge on all indictments all to . . . be served concurrently for a total of 20 years. Now, that was outside his range. We discussed that that was higher than

what he would have been facing as a normal first-time offender if it was not a negotiated plea. We back and forthed [sic] it about whether or not we should go to trial and I believe that we came to an agreement and it did not seem to sit well with [Petitioner]. This is never going to be something that he's going to be happy to take. It was tough the whole way through. But in the end, we did choose to make that plea, we did have that plea, and that was our decision.

Trial counsel recounted explaining the details of a best interest plea, otherwise known as an *Alford* plea, to Petitioner. Trial counsel pointed out that Petitioner never made an admission of guilt and that Petitioner was very concerned that it was made known that he was not admitting guilt. Additionally, trial counsel testified that he discussed the appeals process with Petitioner and that he explained to Petitioner that his only other remedy after the plea would be post-conviction relief.

Petitioner testified that he had struggled with alcoholism at the time of the offenses and that he thought that he attempted to express that to trial counsel. However, Petitioner could not recall if he specifically discussed his mental health history with trial counsel. Petitioner claimed that, at the time of the post-conviction hearing, he had realized that he suffered from memory loss during the time that trial counsel represented him. Petitioner stated, "I have been told by professionals that it's a PTSD that went into manic depression that was enhanced with my alcoholism and my head injuries." However, Petitioner was unsure if this was a proper diagnosis. Petitioner admitted that he discussed some of his condition with trial counsel, but Petitioner didn't realize the full extent of his condition.

Petitioner admitted that he told trial counsel that he "had been drinking from sun up" on the day of the offense, but it is unclear from the record as to which offense Petitioner is referring to. Petitioner also recounted talking to trial counsel about the filing of motions and discussing the plea offers extended to Petitioner. Petitioner denied ever going over the discovery with trial counsel. Petitioner stated that the discussions with trial counsel were one sided. Petitioner indicated that he expressed interest in speaking to the victim's aunt, but as far as Petitioner was aware, trial counsel never made contact with that individual. Petitioner also testified that he wanted trial counsel to look into the mental health history of one of the victims. Petitioner further stated that he was unaware of many of the actions that trial counsel testified that he performed during his investigation of the case.

With regard to his sentence, Petitioner stated that he understood that he would be pleading outside of his range. However, he testified that at the time he made the plea, he did not fully understand the sentencing process and how enhancement factors increase a

sentence within a given range. Petitioner admitted that he was "terrified of trial." He said, "[T]he only thing I was getting out of [trial counsel] was there was basically no chance we would win a trial and I would end up anywhere between 40 and 60 years." Petitioner considered that to be "a life sentence" because he was 48 years old at the time of the post-conviction hearing.

Petitioner asserted that trial counsel explained that "the chances of a verdict in [Petitioner's] favor were slim" and that "[Petitioner] would be able to appeal[.]" Petitioner said, "In my understanding, from what I was gathering from [trial counsel] is that I would have a [better] chance of a lesser sentence in the appeals process than trial." He continued, "So, I took [that] as . . . meaning that I should sign the plea . . . instead of risking a trial situation." Petitioner indicated that it was his understanding that he would be able to maintain his innocence by entering a best interest plea pursuant to *Alford* and raise the issue of his innocence later on appeal. On cross-examination, Petitioner could not recall many of the details of his plea hearing. Specifically, Petitioner did not recall the trial court telling him that he would be giving up his right to an appeal by entering a guilty plea.

In its written order denying post-conviction relief, the post-conviction court found trial counsel's testimony to be "very credible." Conversely, the post-conviction court found that Petitioner was "not credible." In addition, the post-conviction court found that Petitioner "presented no testimony or evidence that establishes that trial counsel's efforts fell below the standard of competent counsel. [Petitioner] offered nothing, except generalizations, concerning errors by trial counsel." The post-conviction court also found that "the recommendations made by [trial counsel] were based on sound reasons after a full investigation of the case and a consideration of all options available to [Petitioner]." Furthermore, the post-conviction court found that Petitioner "freely, voluntarily, and intelligently waived his rights" and found that Petitioner "entered his guilty plea after competent advice from his counsel, after a complete investigation of all the facts, [and] after a thorough examination by the [trial court] wherein [Petitioner] stated under oath that he understood his rights and the nature of the guilty plea."

*Analysis*

Post-conviction relief is available when a "conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. The burden in a post-conviction proceeding is on the petitioner to prove his allegations of fact supporting his grounds for relief by clear and convincing evidence. T.C.A. § 40-30-110(f); *see Dellinger v. State*, 279 S.W.3d 282, 293-94 (Tenn. 2009). On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the

- 5 -

record preponderates against those findings. *Fields v. State*, 40 S.W.3d 450, 456 (Tenn. 2001). Additionally, "questions concerning the credibility of the witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved" by the post-conviction court. *Id.* Because they relate to mixed questions of law and fact, we review the trial court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. *Id.* at 457.

Criminal defendants are constitutionally guaranteed the right to effective assistance of counsel. *Dellinger*, 279 S.W.3d at 293 (citing U.S. Const. amend. VI; *Cuyler v. Sullivan*, 446 U.S. 335, 344 (1980)). When a claim of ineffective assistance of counsel is made under the Sixth Amendment to the United States Constitution, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see Lockhart v. Fretwell*, 506 U.S. 364, 368-72 (1993). "Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). The *Strickland* standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. *State v. Melson*, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

Deficient performance requires a showing that "counsel's representation fell below an objective standard of reasonableness," despite the fact that reviewing courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 688-89. In reviewing counsel's conduct, a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. "Thus, the fact that a particular strategy or tactic failed or even hurt the defense does not, alone, support a claim of ineffective assistance." *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992). Deference is made to trial strategy or tactical choices if they are informed ones based upon adequate preparation. *Hellard v. State*, 629 S.W. 2d 4, 9 (Tenn. 1982).

Prejudice requires proof of "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* This standard also applies to claims arising out of the plea process. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). To satisfy the requirement of prejudice in a case involving a guilty plea, the petitioner must demonstrate

a reasonable probability that, but for counsel's errors, he or she "would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59.

When evaluating the knowing and voluntary nature of a guilty plea, the United States Supreme Court has held that "[t]he standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Alford*, 400 U.S. at 31. The court reviewing the voluntariness of a guilty plea must look to the totality of the circumstances. *See State v. Turner*, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995); *see also Chamberlain v. State*, 815 S.W.2d 534, 542 (Tenn. Crim. App. 1990). A plea resulting from ignorance, misunderstanding, coercion, inducement, or threats is not "voluntary." *Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993). A petitioner's solemn declaration in open court that his plea is knowing and voluntary creates a formidable barrier in any subsequent collateral proceeding because these declarations "carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

We conclude that the evidence does not preponderate against the post-conviction court's findings. Trial counsel recounted an adequate investigation of the facts, adequate communication with Petitioner, and adequate negotiations with the State. Petitioner's inability to remember or his lack of knowledge of the extent of trial counsel's actions does not render those actions deficient. Additionally, Petitioner's argument that trial counsel was ineffective because he advised Petitioner "that he would have a better chance of a lesser sentence on appeal" is undermined by the fact that Petitioner expressly stated during the plea colloquy that he understood that he was waiving his right to an appeal. Petitioner's argument is further undermined by the post-conviction court's findings that trial counsel was "very credible" and Petitioner was "not credible." Petitioner has failed to show that trial counsel was deficient. Additionally, Petitioner has failed to prove that, but for any error by trial counsel, he would not have pleaded guilty and would have insisted on going to trial. Rather, Petitioner stated that he was "terrified of trial."

We also conclude that Petitioner has not shown that his pleas were entered unknowingly or involuntarily. The transcript of the plea colloquy shows that Petitioner indicated that he understood each right that he was giving up and that he voluntarily waived each right. Nothing in the record overcomes the "strong presumption of verity" that is afforded to Petitioner's statements at the plea colloquy. Accordingly, Petitioner is not entitled to relief.

CONCLUSION

Based on the foregoing reasoning and authorities, we affirm the post-conviction court's denial of Petitioner's petition for post-conviction relief.

_____
THOMAS T. WOODALL, PRESIDING JUDGE